**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

WILLIAM D.,                          )
                                     )
        Plaintiff,           )
                                     )
    v.                           )      1:23CV981
                                     )
CAROLYN W. COLVIN,                   )
Acting Commissioner of Social        )
Security,                            )
                                     )
        Defendant.[1]        )

**MEMORANDUM OPINION AND ORDER
OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, William D., brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security (the "Commissioner"), denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 1.) The Commissioner has filed the certified administrative record (Docket Entry 7 (cited herein as "Tr. __")), and both parties have submitted dispositive briefs in accordance with Rule 5 of the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g) (Docket Entry 15 (Plaintiff's Brief); Docket Entry 16

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on November 30, 2024. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should substitute for Martin J. O'Malley as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

(Commissioner's Brief)).  For the reasons that follow, the Court will enter judgment for the Commissioner.[2]

## I.  PROCEDURAL HISTORY

Plaintiff applied for DIB (Tr. 174-77), alleging a disability onset date of December 23, 2015 (see Tr. 174).  Upon denial of that application initially (Tr. 70-84, 102-05) and on reconsideration (Tr. 85-101, 108-11), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 112).  Plaintiff, his attorney, and a vocational expert ("VE") attended the hearing. (Tr. 37-69.)  The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act (Tr. 12-35), and the Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 172).  Plaintiff then sought judicial review of the Commissioner's final decision in this Court, Davis v. Kijakazi, No. 1:20CV640, Docket Entry 1 (M.D.N.C. July 13, 2020), and the Court remanded the case for "further consideration of the opinions of [consultative medical examiner] Dr. [Edward] Forero, and [] evaluation of Plaintiff's need to elevate his lower extremities," Davis v. Kijakazi, No. 1:20CV640, 2022 WL 17683349, at *1 (M.D.N.C. Feb. 4, 2022) (Biggs, J.).  Based on this Court's ruling, the Appeals Council remanded the matter back to the ALJ (Tr. 850-54) "for

---

[2] On consent of the parties, "this case [wa]s referred to the [undersigned] United States Magistrate Judge . . . to conduct all proceedings . . ., to order the entry of judgment, and to conduct all post-judgment proceedings []herein." (Docket Entry 13 at 1.)

2

further proceedings consistent with the order of the [C]ourt" (Tr. 852).

The ALJ held a second hearing, which Plaintiff, his attorney, and a different VE attended (Tr. 755-86), and issued a new decision finding Plaintiff not disabled under the Act (Tr. 729-54). The Appeals Council thereafter rejected Plaintiff's written exceptions to the ALJ's decision (Tr. 720-28), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that decision, the ALJ made the following findings later adopted by the Commissioner:

1. [Plaintiff] meets the insured status requirements of the . . . Act through June 30, 2019.

2. [Plaintiff] did not engage in substantial gainful activity during the period from his alleged onset date of December 23, 2015, through his date last insured of June 30, 2019.

3. Through the date last insured, [Plaintiff] had the following severe impairments: complex regional pain syndrome (CRPS); fibromyalgia; anxiety; and depression.

. . .

4. Through the date last insured, [Plaintiff] d[id] not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5. . . . [T]hrough the date last insured, [Plaintiff] had the residual functional capacity to perform light work . . . except [he] can lift and/or carry up to 20 pounds occasionally and ten pounds frequently; he can stand and/or walk up to four hours total in an eight-hour workday; he can sit for up to six hours in an eight-hour workday; [he] can occasionally push and/or pull with the

left lower extremity; [he] requires the use of a handheld assistive device for balance and ambulation; he can occasionally climb, balance, stoop, kneel, crouch, and crawl; he can understand, remember, and carry out simple instructions, and can use judgment to make simple work-related decisions; and [he] can sustain concentration, attention, and pace sufficient enough to carry out those simple instructions over the course of an eight-hour workday and at least two-hour intervals.

. . .

6. Through the date last insured, [Plaintiff] was unable to perform any past relevant work.

. . .

10. Through the date last insured, considering [Plaintiff]'s age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed.

. . .

11. [Plaintiff] was not under a disability, as defined in the . . . Act, at any time from December 23, 2015, through June 30, 2019, the date last insured.

(Tr. 734-46 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

4

## A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo."
Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a
reviewing court must uphold the factual findings of the ALJ
[underlying the denial of benefits] if they are supported by
substantial evidence and were reached through application of the
correct legal standard." Hines, 453 F.3d at 561 (internal brackets
and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a
reasonable mind might accept as adequate to support a conclusion.'"
Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting
Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of
more than a mere scintilla of evidence but may be somewhat less
than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th
Cir. 2001) (internal brackets and quotation marks omitted). "If
there is evidence to justify a refusal to direct a verdict were the
case before a jury, then there is substantial evidence." Hunter,
993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not
undertake to re-weigh conflicting evidence, make credibility
determinations, or substitute its judgment for that of the [ALJ, as
adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal
brackets and quotation marks omitted). "Where conflicting evidence
allows reasonable minds to differ as to whether a claimant is

5

disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These

---

[3] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity [('RFC')] to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[4]  A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry.  For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied.  The second step determines if the claimant is 'severely' disabled.  If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177.  Alternatively, if a claimant clears steps one and

---

[4] "Through the fourth step, the burden of production and proof is on the claimant.  If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]." Id. at 179.[5] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[6]

_____

[5] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

[6] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

## B.  Assignment of Error

In Plaintiff's first and only issue on review, he argues that "[t]he ALJ failed to account for Plaintiff's pain and his need to elevate his left lower extremity in the RFC." (Docket Entry 15 at 5 (bold font and block formatting omitted).)  In that regard, Plaintiff points to his testimony "that he has to elevate his feet by lying in bed and putting pillows underneath [his] legs to raise them above his chest" (id. (citing Tr. 769)), as well as "that he spends fifteen to sixteen hours of the day with his legs elevated," and "has a recliner chair where his feet may be elevated above his head" (id. (citing Tr. 770)). According to Plaintiff, "[t]here is also support for [his] need to elevate his left leg in the medical evidence." (Id.; see also id. (detailing evidence Plaintiff believes harmonizes with his subjective statements (citing Tr. 251, 264, 645, 652)).)  Plaintiff contends that, "[d]espite th[at] evidence, [the] ALJ [] did not determine that [Plaintiff] required the ability to elevate his legs as part of the RFC determination" (id. (referencing Tr. 737)), and "essentially required objective evidence to verify [Plaintiff]'s subjective statements regarding his pain, allodynia, and resulting need to elevate his legs (by relying on examination findings which are, in most cases, irrelevant to his complaints of pain and CRPS)" (id. at 7 (citing Oakes v. Kijakazi, 70 F.4th 207, 215 (4th Cir. 2023), and Arakas v. Commissioner, Soc. Sec. Admin., 983 F.3d 83, 97-98 (4th Cir.

2020))).  In Plaintiff's view, the ALJ's above-described error qualifies as "potentially outcome determinative, as the [VE] testified that the need to elevate the legs at waist level or higher would result in all work being precluded."  (Id. at 8 (citing Tr. 783).)  For the reasons that follow, those arguments ultimately miss the mark.

RFC measures the most a claimant can do despite any physical and mental limitations.  Hines, 453 F.3d at 562; 20 C.F.R. § 404.1545(a).  An ALJ must determine a claimant's exertional and non-exertional capacity only after considering all of a claimant's impairments, as well as any related symptoms, including pain.  See Hines, 453 F.3d at 562-63; 20 C.F.R. § 404.1545(b).  The ALJ then must match the claimant's exertional abilities to an appropriate level of work (i.e., sedentary, light, medium, heavy, or very heavy).  See 20 C.F.R. § 404.1567.  Any non-exertional limitations may further restrict a claimant's ability to perform jobs within an exertional level.  See 20 C.F.R. § 404.1569a(c).

"The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). . . .  The [ALJ] must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved."  Social Security Ruling 96-8p, Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, at *7 (July

10

2, 1996) ("SSR 96-8p"). Although the ALJ need not discuss every piece of evidence in making an RFC determination, see Reid v. Commissioner of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014), he or she "must both identify evidence that supports his [or her] conclusion and build an accurate and logical bridge from that evidence to [that] conclusion," Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (internal emphasis, quotation marks, and brackets omitted). Here, the ALJ's decision supplies the necessary "accurate and logical bridge," id. (internal quotation marks omitted), between her discussion of the evidence and the absence of a leg-elevation requirement in the RFC assessment.

To begin, the ALJ in this case expressly acknowledged Plaintiff's testimony "that he lays in bed and elevates his leg above his chest for 15-to-16 hours a day" (Tr. 738 (referencing Tr. )), but found his "statements concerning the intensity, persistence and limiting effects of [his] symptoms [] not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in th[e ALJ's] decision" (id.). Thereafter, the ALJ provided the following explanation for omitting a leg-elevation requirement from the RFC:

> The [ALJ] has included a limitation in the [ RFC] regarding the use of a handheld assistive device for ambulation and balance, but does not find a need for [Plaintiff] to elevate his lower extremities. The consultative [medical] examiner [Dr. Forero] noted [Plaintiff] has unusual complaints, and although there was muscle tenderness in his lower extremities, there was no atrophy or fasciculations, although [Dr. Forero] did

11

indicate the need for a simple cane for walking, standing, balance, and pain. At an examination in February 2019, [Plaintiff] was found to have normal range of motion in all extremities, except for pain with full extension of the left elbow. Although there was tenderness over the medial epicondyles, there was no effusion, warmth, or erythema. Further, on examination by a pain management specialist in February 2019, there was no clubbing, cyanosis, or edema of the extremities. A neurological examination was normal, his reflexes were normal and symmetric in all four extremities, he had good range of motion of all extremities with the joints all appearing to be normal, and he had normal and equal muscle strength in the upper and lower extremities, expect [sic] for slightly diminished strength in the left lower extremity. Lastly, the [ALJ] notes that <u>throughout the medical evidence of record, [Plaintiff] was often counseled to maintain normal activity, and to avoid prolonged bed rest</u>.

(Tr. 743 (internal parenthetical citations omitted) (emphasis added).) Plaintiff challenges that analysis on two grounds, neither of which ultimately provide a basis for remand, as explained in more detail below.

Plaintiff first contends that, "upon remand, [the] ALJ . . . [f]ollow[ed] a track similar to her prior decision . . . by summarizing [Plaintiff]'s testimony" (Docket Entry 15 at 6 (citing Tr. 737-38)), "then summarily state[d] that treatment notes, including [Plaintiff]'s subjective reports to his treatment providers d[id] not indicate the level of dysfunction alleged" (<u>id.</u> (citing Tr. 738)), "then provide[d] a medical summary and follow[ed] by noting the 'generally normal examinations' and a normal neurological examination" (<u>id.</u> (citing Tr. 738-42, and quoting Tr. 742)). Plaintiff further notes that, after finding

12

that Plaintiff did not need to elevate his lower extremities, the ALJ "further summarize[d] and cite[d] numerous normal examination findings in support of her contention" (id. (citing Tr. 743)), and thus argues that the ALJ's "discussion of the medical evidence mirrors the very factors that this Court found so troubling about her prior decision" and "still seems to dismiss [Plaintiff]'s consistent and repetitive subjective complaints due to normal examinations" (id.).

In the ALJ's current decision, she repeated the assertion from her prior decision that "the evidence d[id] not support the alleged loss of functioning," because "[Plaintiff] had generally normal examinations, except for some decreased strength in the left lower extremity," and the ALJ's ensuing description of those purportedly "normal examinations" tracks almost verbatim with the ALJ's prior decision. (Compare Tr. 742-43 (emphasis added), with Tr. 24-25.) The Court, in adopting the undersigned's recommendation to remand, found that the ALJ erred "with regard to her discussion of 'generally normal examinations,'" Davis v. Kijakazi, No. 1:20CV640, 2022 WL 172870, at *8 (M.D.N.C. Jan. 19, 2022) (unpublished), recommendation adopted, 2022 WL 17683349 (M.D.N.C. Feb. 4, 2022) (unpublished) (Biggs, J.) (quoting Tr. 24), by 1) "entirely ignor[ing] Plaintiff's repeated complaints of allodynia and cit[ing] to objective findings such as 'normal' or 'good' range of motion and a lack of atrophy and fasciculations, without explaining

13

how those findings related to the intensity, persistence, and limiting effects of Plaintiff's CRPS pain and other symptoms," id.; 2) "rel[ying] upon findings of purportedly 'normal' or 'good' range of motion without acknowledging that Plaintiff rarely had full range of motion in his left lower extremity and nearly always reported pain from the movement," id. at *9 (quoting Tr. 24, and citing Tr. 260, 291, 358, 360-61, 366, 370, 385, 534, 650); 3) "gloss[ing] over a large quantity of the [] medical evidence which reflected an abnormal gait and/or assistive device usage," id. (internal parenthetical citation omitted) (citing Tr. 260, 264, 294, 356, 360, 369, 371, 376, 386, 407, 424, 431, 482, 493, 571, 592, 632, 641, 650, 656); and 4) "highlight[ing] the fact Plaintiff 'was not taking any medications' without also acknowledging that he had tried, without success, a corticosteroid injection, multiple nerve blocks, a spinal cord stimulator, a Quell electrical stimulation system, physical therapy, and no fewer than 12 different pain medications to try to control his pain and other CRPS symptoms," id. (internal parenthetical citations omitted) (quoting Tr. 24, and citing Tr. 47-48, 50, 55, 57, 362, 364, 367, 371, 378-91, 400, 409-10, 434, 441, 451, 456, 463, 465, 470, 478-90, 529). The ALJ's error in retaining this improper language regarding "generally normal examinations" in her current decision, however, remains harmless under the facts of this case for two reasons. See generally Fisher v. Bowen, 869 F.2d 1055, 1057 (7th

14

Cir. 1989) (observing that, "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result").

First, unlike the ALJ's prior decision (see Tr. 19-26), her current decision expressly acknowledged that "the medical evidence revealed . . . <u>routine</u> findings of allodynia and pain during physical examinations," that "[Plaintiff] <u>rarely</u> had full range of motion of his left lower extremity and reported pain with movement," and that "the evidence reflected an <u>abnormal</u> gait and/or assistive device usage." (Tr. 744 (emphasis added).) Although the ALJ made those findings in the paragraph in which she assessed the persuasiveness of Dr. Forero's opinions (see <u>id.</u>), they explain why, in contrast to her prior decision (see Tr. 25), she found "persuasive" Dr. Forero's opinion that Plaintiff "needed the use of a simple cane for walking, standing, balance, and pain" (Tr. 744 (referencing Tr. 294)), included the need for "a handheld assistive device for balance and ambulation" in the RFC (Tr. 737), added a limitation to occasional pushing and pulling with the left lower extremity (see <u>id.</u>), and reduced the total amount of standing and walking from six to four hours in an eight-hour workday (see <u>id.</u>; <u>compare</u> Tr. 19 (ALJ's RFC in prior decision)). As block-quoted above, the ALJ explained, in assessing Plaintiff's alleged need to elevate his lower extremities, that the evidence supported "a

15

limitation in the [RFC] regarding the use of a handheld assistive device for ambulation and balance, but [] not [] a need for [Plaintiff] to elevate his lower extremities," and cited Dr. Forero's examination findings and opinions in support of that determination. (Tr. 743.) That explanation supplies substantial evidence to explain the ALJ's omission of a leg elevation limitation from the RFC, permits the Court to meaningfully review the ALJ's decision-making, and thus renders harmless the ALJ's inclusion in her current decision of the language the Court found erroneous in her prior decision.

Second, and most significantly, the ALJ observed as part of her reasoning for rejecting a leg-elevation limitation, "that[,] throughout the medical evidence of record[, Plaintiff] was often counseled to maintain normal activity, and to avoid prolonged bed rest." (Tr. 743.) Thus, not only does the record lack any opinion from Plaintiff's treating medical providers that Plaintiff's CRPS required him to elevate his legs but, in fact, the record reflects that <u>his providers urged Plaintiff to avoid bed rest and to remain active</u>. (<u>See</u> Tr. 367, 371, 378, 409, 426-27, 433-34, 530, 537.)

Plaintiff nevertheless maintains that "[t]here is [] support for [his] need to elevate his left leg in the medical evidence" (Docket Entry 15 at 5), and points to instances in which his treating providers either <u>observed</u> Plaintiff with his legs elevated (<u>id.</u> (citing Tr. 251, 264)), or documented Plaintiff's <u>subjective</u>

16

reports of elevating his legs while at home (id. (citing Tr. 645, 652)). However, neither a provider's observation that a patient opted to elevate his leg during an office visit, nor a provider's documentation of a patient's subjective reports of leg elevation at home "transforms [the provider's] observations into clinical evidence," as that "would completely vitiate any notion of objective clinical medical evidence," Craig, 76 F.3d at 590 n.2 (internal quotation marks omitted); see also id. ("There is nothing objective about a doctor saying, without more, I observed my patient telling me she was in pain." (internal quotation marks omitted)). Moreover, to the extent conflicting evidence existed regarding Plaintiff's need to elevate his legs (i.e., his providers' documentation of Plaintiff's self-reports of leg elevation and their observations of such elevation versus his providers' recommendations against bed rest and for activity), the ALJ, and not this Court, must resolve (and did resolve) those conflicts, see Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996) ("The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court.").

Lastly, Plaintiff asserts that the ALJ violated Oakes and Arakas by "essentially requir[ing] objective evidence to verify [Plaintiff]'s subjective statements regarding his pain, allodynia, and resulting need to elevate his legs," and notes that the United States Court of Appeals for the Fourth Circuit "'allows a claimant

17

to rely exclusively on subjective evidence in proving . . . that [his] symptoms [are] so continuous and/or severe that they prevented [him] from working.'" (Docket Entry 15 at 7 (quoting Oakes, 70 F.4th at 215) (some brackets omitted); see also id. (quoting Arakas, 983 F.3d at 97-98, for proposition that "'ALJs may not rely on objective medical evidence (or the lack thereof) – **even as just one of multiple factors** – to discount a claimant's subjective complaints regarding symptoms of fibromyalgia or some other disease that does not produce such evidence'") (emphasis added by Plaintiff).)

To the extent Plaintiff intends that contention to mean that the ALJ erred by considering objective medical evidence at all in analyzing the intensity, persistence, and limiting effects of Plaintiff's CRPS symptoms, such an argument misses the mark. Although the Fourth Circuit recently "reiterate[d ] long-standing [Circuit] law . . . that disability claimants are entitled to rely exclusively on subjective evidence to prove the severity, persistence, and limiting effects of their symptoms," Arakas, 983 F.3d at 98; see also Oakes, 70 F.4th at 215, a long line of cases containing the substance of that holding, including Craig and Hines (among others), clarify that, "[a]lthough a claimant's allegations about her [symptoms] may not be discredited solely because they are not substantiated by objective evidence of the [symptoms themselves] or [their] severity, they need not be accepted to the

18

extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the [symptoms] the claimant alleges she suffers," Craig, 76 F.3d at 595 (emphasis added); see also Hines, 453 F.3d at 565 n.3 (quoting Craig, 76 F.3d at 595).

In other words, under the appropriate circumstances, an ALJ may choose to rely exclusively on a claimant's subjective symptom reports to find disabling symptoms; however, Arakas, Oakes, Craig, and Hines do not compel ALJs to consider only subjective evidence, as such a requirement would conflict with both the Act and its implementing regulations, which plainly require ALJs to consider a variety of factors, including objective medical evidence, in evaluating the intensity, persistence, and limiting effects of symptoms. See 42 U.S.C. § 423(d)(5)(A) ("Objective medical evidence of pain . . . established by medically acceptable clinical or laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether [an] individual is under a disability." (emphasis added)); see also 20 C.F.R. § 404.1529(c) (directing ALJs to assess a claimant's medical history, medical signs and laboratory findings, daily activities, testimony about nature and location of pain, medication and other treatment used to alleviate pain, along with medical opinions from examining and non-examining sources). Here,

19

in compliance with Arakas, Oakes, Hines, and Craig, the ALJ considered the objective medical evidence as one part of her evaluation of the intensity, persistence, and limiting effects of Plaintiff's CRPS symptoms, as the ALJ also considered the lack of opinion evidence supporting Plaintiff's alleged need to elevate his legs (see Tr. 743).

Moreover, the Court should decline Plaintiff's invitation to extend Arakas' holding "that ALJs may not rely on objective medical evidence (or the lack thereof) — even as just one of multiple factors — to discount a claimant's subjective complaints regarding symptoms of fibromyalgia or some other disease that does not produce such evidence," Arakas, 983 F.3d at 97 (emphasis added), to his CRPS. Plaintiff has made no attempt to demonstrate that CRPS qualifies as a "disease that does not produce [objective medical] evidence," id., under Arakas (see Docket Entry 15), and the Fourth Circuit recently rejected a plaintiff's attempt to extend the reach of that holding in Arakas absent a showing the impairments in question did not produce objective medical evidence, see Owens v. Commissioner, Soc. Sec. Admin., No. 23-1954, 2024 WL 5166612, at *1 (4th Cir. Dec. 19, 2024) (unpublished) ("[The plaintiff] presents no evidence that severe urinary and digestive issues would not be reflected in clinical testing[,] . . . [and] does not cite to any case extending *Arakas*'s holding to irritable bowel syndrome (IBS) or urinary conditions.").

20

In sum, Plaintiff's first and only assignment of error fails as a matter of law.

### III. CONCLUSION

Plaintiff has not established an error warranting relief.

**IT IS THEREFORE ORDERED** that the Commissioner's decision finding no disability is **AFFIRMED**, and that this action is **DISMISSED** with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

January 13, 2025

21